IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHARON CHERRY FIEGER,** | | **CIVIL ACTION** |
| **Plaintiff,** | | |
| | | |
| **v.** | | |
| | | |
| **CLIFFORD HALL AND SIGNATURE** | | **NO.  24-2410** |
| **EMERGENCY PRODUCTS, LLC,** | | |
| **Defendants.** | | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Sharon Fieger ("Fieger") sued Defendants Clifford Hall ("Hall") and Signature

Emergency Products, LLC ("SEP") for breach of contract, fraud, and promissory estoppel, all

under Pennsylvania law.  Following months of unresolved discovery disputes with SEP, Fieger

filed a Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a), which the Court

granted on April 6, 2026 (the "April 6 Order").  The Order required SEP to produce certain

specifically identified financial documents by April 20, 2026.  Fieger maintains that SEP defied

the Order and has not produced the documents.  She now seeks, pursuant to Federal Rule of Civil

Procedure 37, sanctions awarding her: (1) reasonable expenses she incurred in bringing the

Motion to Compel, *see* Fed. R. Civ. P. 37(a)(5)(A); (2) reasonable expenses arising from SEP's

failure to produce the documents by the April 20, 2026 deadline in violation of the April 6 Order,

*see id.* (b)(2)(C); and, (3) an additional order to compel SEP to produce the requested documents.

For the following reasons, Fieger's Motion shall be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

Fieger's suit against SEP and Hall arises from her allegations that, as compensation for

legal representation that she provided in a separate lawsuit, Hall agreed to give her an equity

1

interest in SEP—an agreement that she alleges Hall has subsequently refused to honor.  While

Fieger estimates her claimed equity interest is now worth more than $600,000, she has retained a

business valuation expert to determine a more precise value of her alleged damages.  To support

this valuation analysis, Fieger sought complete financial records from SEP,[1] but notwithstanding

SEP's obligation to produce those records, the parties remain locked in a discovery imbroglio.

Discovery in this case has dragged on for nearly 18 months—much longer than originally

contemplated in the January 23, 2025, Scheduling Order, which set September 22, 2025, for the

close of fact discovery.  In August 2025, a month before that deadline, the parties jointly

stipulated that they were "working cooperatively to exchange documents" but nonetheless sought

additional time to complete production.  They were given a 60-day extension, with an amended

deadline of November 24, 2025.  Between receiving the extension and the new date for the close

of fact discovery, Fieger twice notified the Court of persistent discovery disputes.  On November

21, 2025—three days before the amended deadline—she moved for a second extension, citing

SEP's failure to produce complete sets of the detailed financial records that she sought for expert

analysis (*i.e.*, bank statements, general ledgers, profit and loss statements, balance sheets,

statements of cash flow, and sales journals and summaries).  After an additional teleconference

during which the Court made clear that SEP's objections as to relevance were overbroad and that

it was required to produce the documents Fieger requested, the parties appeared to be back on

track.  On December 19, 2025, Fieger reported that, although they had not resolved all of their

disputes, the parties had "made substantial progress toward resolving the discovery issues."

Regrettably, that progress was fleeting.

---

[1] Consistent with Rule 34(b), Fieger sought these records in their reasonably usable and regularly used forms, including, where applicable, the native QuickBooks format.

On January 23, 2026, following yet another teleconference, the scheduling order was again amended to give the parties until April 15, 2026, to complete fact discovery.  In that teleconference SEP told Fieger—and the Court—that it could produce applicable documents within approximately 20 days.  One month later, on February 23, 2026,[2] Fieger filed her Motion to Compel, citing SEP's continued failure to fully produce the records.  The April 6 Order followed, extending the close of fact discovery to May 18, 2026, and requiring SEP to fully produce the financial documents for SEP and its affiliate companies in the format requested by Fieger on or before April 20, 2026.

SEP, by its own concession, failed to fully produce these materials by the Court-ordered deadline.[3]

## II.     DISCUSSION

Spirited collegiality is the ideal of discovery practice.  Parties participate cooperatively in the discovery process, and the Rules of Civil Procedure empower them to do so "almost entirely without the court's involvement."  *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *see also* Fed. R. Civ. P. Title V advisory committee's note to 1970 amendment (noting that the process is "designed to encourage extrajudicial discovery with a minimum of court intervention").  These Rules create a binding framework for "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  While enforcement is a solemn duty reserved for judges, the parties and the courts nonetheless "share

---

[2] Whether SEP intended to measure its 20-day commitment in calendar days (*i.e.*, February 12, 2026) or business days (*i.e.*, February 23, 2026) was unclear then and is immaterial now.  By either accounting, Fieger waited until after the 20 days had passed—and after she followed up six times in writing and once by telephone call—and SEP disregarded its promised production dates before filing her Motion to Compel.

[3] SEP says it met and conferred with Fieger in early-to-mid May to address the issue of incomplete sets of financial documents and reports generated in an unusable format, rather than the native files or a reasonably usable form.  *See* Fed. R. Civ. P. 34(b)(2)(E).  Yet Fieger's request for an additional court order to compel production makes it clear that—as of the date she filed the present Motion—she still had not received complete and usable documents.

the responsibility to employ the [R]ules" in a manner auspicious to the administration of justice. Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment. Fundamentally, the Rules are a vital component of litigation, "designed to further the due process of law that the Constitution guarantees." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000).

Nevertheless, from time to time, traditions alone are insufficient to impel compliance with these obligatory rules or a court's orders. When necessary, courts may rely upon their inherent authority to sanction, as well as the "[r]ule-based and statutory sanction regimes." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017). Among these rule-based regimes are the sanctions enumerated in Rule 37, which govern noncompliance with discovery obligations. "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).

Despite the ideal, parties and their attorneys on occasion shirk their discovery obligations and engage—as SEP does here—in outright chicanery. *Roadway*, 447 U.S. at 757 n.4 ("Due to sloth, inattention, or desire to seize tactical advantage, lawyers have long indulged in dilatory practices."). SEP committed to producing the requested documents within approximately 20 days of the January 2026 teleconference, but it did not do so. The Court, in its April 6 Order, ordered that production in a certain format and by a certain deadline. And, yet, it *still* did not turn over the documents. The mere fact of SEP's continued noncompliance, first with its discovery obligations and then with the April 6 Order, mandates sanctions. *See Societe Internationale v. Rogers*, 357 U.S. 197, 208 (1958) (holding that a "party 'refuses to obey'

4

simply by failing to comply with an order"); Fed. R. Civ. P. 37(b)(2) advisory committee's note to 1970 amendment (incorporating the *Societe Internationale* holding into the Rule).

### A.  Sanctions Pursuant to Rule 37(a)(5)(A)

When a court grants a party's Rule 37 motion to compel discovery, it must also order the party or attorney (or both) whose conduct necessitated the motion to pay the expenses that the movant reasonably incurred to prepare the filing.  Fed. R. Civ. P. 37(a)(5)(A).  This sanction is mandatory and the obligation is only obviated: (i) if the movant failed to make a good-faith attempt, without court intervention, to obtain the discovery; (ii) if the opposing party's noncompliance was "substantially justified;" or, (iii) if "other circumstances make an award of expenses unjust." *Id*.

None of the enumerated exceptions are present here.  First, Fieger made multiple good-faith attempts to resolve the discovery dispute before she sought an order to compel: she filed her Rule 26 disclosures, issued subpoenas, and consistently and clearly communicated her production requests to SEP.  On multiple occasions, SEP contended that it was working collaboratively with Fieger to complete discovery, but its document production continued to be fragmentary.  Second, despite SEP's assertion that its delays were "substantially justified," it makes no attempt to corroborate that claim.  Absent any facts, an elemental recitation of the exception is inadequate.  Third, there is no reason, nor does SEP present any compelling argument,[4] as to why imposing a fee-shifting sanction pursuant to Rule 37(a)(5)(A) would be unjust.

---

[4] While SEP makes no specific reference to subpart (a)(5)(A)(iii) in its reply, it makes two general arguments constructively claiming that "other circumstances make an award of expenses unjust."  Both are without merit. First, it claims that production is now complete and "there is no current live dispute requiring sanctions or further Court intervention."  Even if SEP has since fulfilled its production obligations, its after-the-fact cure does not moot the imposition of sanctions for its conduct.  *See, e.g., N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) ("Belated compliance with discovery orders does not preclude the imposition of sanctions."); *DH Tech, Inc. v. Synergystex Int'l., Inc.*, 154 F.3d 1333, 1344 (Fed. Cir. 1998) (same); *S. New England Tel. Co. v.*

Accordingly, Fieger is entitled to an award of attorney's fees associated with the filing of her Motion to Compel.

### B.  Sanctions Pursuant to Rule 37(b)(2)(C)

In addition to the sanctions required here by Rule 37(a)(5)(A), sanctions under Rule 37(b)(2)(C) are also at issue.  That rule requires that a court must order a party or lawyer (or both) in violation of a discovery order to pay the reasonable expenses resulting from the noncompliance.  The award is mandated when a party is, in fact, noncompliant with a discovery order, and can only be nullified if the noncompliance was "substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

SEP's primary argument appears to be that this issue is moot—it "met and conferred" with opposing counsel about deficiencies in "early-to-mid May 2026" and has "since completed production."  That, even if true, is not the test.  The question is whether SEP violated the April 6 Order and whether that violation resulted in additional expenses for Fieger.  By SEP's own admission, it did not meet that deadline—"early-to-mid May" falls several weeks after April 20, 2026.  And, Fieger argues, SEP's late and incomplete production has substantially increased her expert witness and legal fees.

Nor does SEP's conclusory assertion that the "delay was substantially justified" change this analysis.  As discussed above, SEP provides no explanation for its delay, and merely stating that it was justified does not make it so.

---

*Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (same).  Second, as if to trivialize the spate of production disputes, SEP asserts that such disagreements "centered on format and completeness concerns that have been addressed."  Fieger's repeated discovery requests were unambiguous as to the substance and form of production, yet SEP quibbled for months about purported irrelevance.  And then, when it finally did give Fieger some of the documents she requested, it produced incomplete or unusable documents, including a QuickBooks ledger as an 11,852-page print-style document displaying only limited columns per page.  Even now, nearly three months after the April 20 deadline, it is not clear whether SEP has completed production.

SEP's counsel further represents to the Court—without citing any authority—that "[s]anctions under Rule 37(b) are typically reserved for willful or bad faith noncompliance and material prejudice." That is incorrect. As explained above, a court may issue sanctions under its inherent authority or the "[r]ule-based and statutory sanction regimes," such as Rule 37. *Goodyear*, 581 U.S. at 108 n.5. In either circumstance, a court is only required to establish a "causal link" between one party's discovery misconduct and the costs incurred by another party. *Id*. at 108. There is no inquiry into a motive for the misconduct, let alone the need for a finding that the party acted in bad faith.

Accordingly, Fieger is entitled to an award of reasonable costs, including attorney's fees and expert fees, resulting from SEP's noncompliance with the April 6 Order.

### C.  Other Requested Relief

Fieger also seeks sanctions in the form of a renewed order to compel. Such an order is, however, unnecessary. The Court's April 6 Order remains in effect and SEP, despite its tardiness, is under an obligation to immediately and fully comply, producing full sets of the requested documents in the ordered format. Further defiance of court orders and flouting of the Rules will not be tolerated, and may be remedied with additional sanctions, including, if necessary, those set forth in Rule 37(b)(2)(A) and 18 U.S.C. § 401.[5]

***

For the foregoing reasons, Fieger's Motion for Sanctions shall be granted as to Rule 37(a)(5)(A) and Rule 37(b)(2)(C) and denied as to her other request for relief.

---

[5] Rule 37(b)(2)(A) enables a court to "issue further just orders" to equitably resolve discovery noncompliance, up to or including rendering a default judgment against the disobedient party. In relevant part, 18 U.S.C. § 401 provides that "a court . . . shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . disobedience or resistance to its lawful . . . process, order, [or] rule. . . ."

8

An appropriate order follows.

**BY THE COURT:**

S/ WENDY BEETLESTONE

_____

**WENDY BEETLESTONE, C.J.**

8